UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:18-cv-72-FDW

| JESSE J. MONTGOMERY, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | **ORDER** |
| M. LOLLEY, et al., | ) |  |
| Defendants. | ) |  |

**THIS MATTER** is before the Court on initial review of *pro se* Plaintiff's Complaint, (Doc. No. 1). Plaintiff has filed an Application to Proceed in District Court Without Prepaying Fees or Costs. (Doc. No. 2).

**I.     BACKGROUND**

*Pro se* Plaintiff filed a civil rights suit pursuant to 42 U.S.C. § 1983 while incarcerated at the Henderson County Detention Center.[1] He names as Defendants Henderson County Sheriff's Office Detectives M. Lolley and Darrin Whitaker, and Deputy Sheriff Nichlus Newell.

Liberally construing the Complaint and accepting the allegations as true, Plaintiff was taking a shower at a friend's house on November 9, 2017, when someone kicked in the front door and screamed "sheriff department." (Doc. No. 1 at 12). Officers dragged Plaintiff out of the bathroom naked and he sked where was their warrant. He asked again for the warrant and one of the uniformed deputies on the scene tazed him, which dropped him to the ground, where he was

---

[1] Online records indicate that Plaintiff is no longer incarcerated at the Henderson County Detention Center and he is not in the custody of the North Carolina Department of Corrections. Plaintiff is cautioned that it is his responsibility to keep the Court apprised of his current address at all times. Failure to do so may result in this actions' dismissal without prejudice for lack of prosecution.

beaten, kicked, and handcuffed. They made him stand up and dressed him in pants that were not his and were too large. Plaintiff then "struggled a little" and officers slammed him on the kitchen counter, cracking his ribs and making it very hard to breathe. (Doc. No. 1 at 12). Detective Whitaker wrapped shackles around his ankles then uniformed officers carried him by his ankles and handcuffs and was thrown into the back seat of Whitaker's patrol car. Plaintiff alleges that they then handcuffed a naked woman, Bojana DaBich, and caused a mentally stable woman who was present, Jackie Baheart, to panic.

"They" never gave Plaintiff medical treatment for his cracked ribs "but [Plaintiff] never knew if they w[ere] even cracked at all." (Doc. No. 1 at 6). Plaintiff submitted a medical request that was ignored. (Id.). Plaintiff told "medical," Sergeant Bradley, and Lieutenant Fuss that he was not receiving proper medical treatment and they said they would forward his message to medical (Doc. No. 1 at 8).

Plaintiff asks for the charges to be dismissed because Defendants used excessive force on him and engaged in an illegal search and seizure. He also asks that they pay his medical expenses.

## II.      MOTION TO PROCEED *IN FORMA PAUPERIS*

The Court first address Plaintiff's motion to proceed *in forma pauperis*.[2] Plaintiff's affidavit shows that he has no monthly income, no assets, and no expenses. (Doc. No. 2 at 1-4). He does not expect any major changes to his monthly expenses, assets, or liabilities in the next year. (Id. at 6). He does not expect to pay any expenses or attorney's fees in conjunction with this

---

[2] Plaintiff will not be required to pay the filing fee under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915, because he does not appear to be in custody at this time. See DeBlasio v. Gilmore, 315 F.3d 396 (4th Cir. 2003) (prisoner who filed civil rights action pursuant to *in forma pauperis* provision of the PLRA, under which prisoner was allowed to make installment payments toward the filing fee, was not required to pay remaining balance of filing fee upon his subsequent release from prison; rather, the released prisoner's obligation to pay filing fees was required to be determined solely by whether he qualified *for in forma pauperis status* under the general *in forma pauperis* statute).

lawsuit. (Id.). He explains his inability to pay the costs of these proceedings "because [he is] unemployed." (Id.). The Court is satisfied that Plaintiff does not have sufficient funds to pay the filing fee. The Court will, therefore, grant the motion and permit Plaintiff to proceed *in forma pauperis*.

### III. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must

3

still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

## IV. DISCUSSION

### (1) Parties

#### (A) Individuals Not Named as Defendants

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004).

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served). Accordingly, the allegations against unnamed individuals will be dismissed without prejudice.

4

### (B) Claims on Behalf of Others

A prisoner cannot file a lawsuit on behalf of others. See Hummer v. Dalton, 657 F.2d 621, 635-26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for others); Oxendine v. Williams, 509 F.2d 1405 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.").

Plaintiff alleges that officers' treatment of two women who were present at the house at the time of his arrest amounted to cruel and unusual punishment. However, he lacks standing to assert their claims and, accordingly, they will be dismissed.

### (2) Illegal Search and Seizure

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. Searches conducted pursuant to a validly issued warrant carry a presumption of legality which can be overcome "if the scope of the search exceeds that permitted by the terms of the validly issued warrant … the subsequent seizure is unconstitutional." Wilson v. Layne, 526 U.S. 603, 611 (1999). Absent a recognized exception to the warrant requirement, a search may not encompass items not specified within the warrant. Buonocore v. Harris, 65 F.3d 347 (4th Cir. 1995) (citing Bivens v. Six Unknown Named Agents, 403 U.S. 388, 394 n.7 (2001) ("the Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant…."). Those conducting the search may only actively search for the items listed in the warrant. Buonocore, 65 F.3d at 356.

Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus pursuant to 28 U.S.C. § 2254, and a complaint under the Civil Rights act, § 1983. Muhammad v. Close, 540 U.S. 749, 750 (2004). "Habeas corpus, and not § 1983, is

5

the exclusive federal remedy for state prisoners seeking actual release from confinement," Griffin v. Baltimore Police Dep't, 804 F.3d 692, 694–95 (4th Cir. 2015) (citing Preiser v. Rodriguez, 411 U.S. 475, 487–90 (1973)), and "requests for relief turning on circumstances of confinement may be presented in a § 1983 action," Muhammad, 540 U.S. at 750. Some cases are "hybrids," where a prisoner seeks damages, which are unavailable through a habeas action, but on allegations that either imply the invalidity of an underlying conviction or of a particular ground for denying relief short of serving the maximum term of confinement. Id. To address this situation, the Supreme Court held in Heck v. Humphrey, 512 U.S. 477 (1994), that:

> to recover damages for … harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction and sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus….

Id. at 485.

For Heck to bar a § 1983 claim, (1) a judgment in favor of the plaintiff [must] necessarily imply the invalidity of [a plaintiff's] conviction or sentence, and (2) the claim must be brought by a claimant who is either (i) currently in custody or (ii) no longer in custody because the sentence has been served, but nevertheless could have practicably sought habeas relief while in custody. Heck, 512 U.S. at 487; Covey v. Assessor of Ohio Cty., 777 F.3d 186, 197 (4th Cir. 2015).

Further, federal courts must refrain from staying or enjoining pending state prosecutions except under special circumstances. Younger v. Harris, 401 U.S. 37 (1971). The Younger abstention doctrine extends to state civil proceedings that are akin to criminal prosecutions, Huffman v. Pursue Ltd., 420 U.S. 592 (1972), or that implicate a state's interest in enforcing the orders and judgments of its courts, Pennzoil Co. v. Texaco Inc., 481 U.S. 1 (1987). Proceedings

6

fitting within the Younger doctrine include state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. New Orleans Public Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 367-68 (1989). A federal court may disregard Younger's mandate to abstain from interfering with ongoing state proceedings only where extraordinary circumstances exist that present the possibility of irreparable harm. Robinson v. Thomas, 855 F.3d 278, 285 (4th Cir. 2017) (internal quotations omitted).

Plaintiff appears to allege that officers illegally entered his friend's home without a warrant and arrested him. The only relief he seeks with regards to this claim is that the charges be dismissed. However, Plaintiff was a pretrial detainee at the time he filed the Complaint and he has failed to update the Court with regards to the status of his criminal charges. It is not clear on the record presently before the Court whether Plaintiff's Fourth Amendment claim is barred by Heck or Younger. See, e.g., Alipui v. Byerson, 638 Fed. Appx. 214, 216 (4th Cir. 2016) (permitting an illegal seizure claim to proceed because it was not clear that the evidence seized during plaintiff's arrest on state charges was used to secure his federal convictions such that success on his search and seizure claims would not necessarily imply that his federal convictions were invalid, and additionally, he did not plead facts in his § 1983 complaint that were inconsistent with his guilty pleas to the federal charges). Therefore, Plaintiff's illegal seizure claim will be permitted to proceed at this time.

**(3)** **Excessive Force**

Claims that police officers used excessive force to seize a citizen, or were present and failed to intervene, are cognizable under § 1983. Graham v. Connor, 490 U.S. 386 (1989); see County of Los Angeles, Ca. v. Mendez, 137 S.Ct. 1539, 1546 (2017) (Graham sets forth the "settled and

7

exclusive framework for analyzing whether the force used in making a seizure complies with the Fourth Amendment."). Fourth Amendment jurisprudence "has long recognized that the right to make an arrest or an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. 386, 396 (1989). Whether a use of force is "reasonable" under the Fourth Amendment requires balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests. Tennessee v. Garner, 471 U.S. 1, 7-8 (1985); United States v. Place, 462 U.S. 696, 703 (1983). Reasonableness is an "objective" inquiry that pays "careful attention to the facts and circumstances of each particular case" including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.; Saucier v. Katz, 533 U.S. 194, 207 (2001), *overruled on other grounds by* Pearson v. Callahan, 555 U.S. 223 (2009) (excessive force claims are evaluated for reasonableness based on the information the officers had when the conduct occurred); Scott v. United States, 436 U.S. 128, 137-39 (1978) (officer's subjective state of mind does not invalidate action as long as the circumstances, viewed objectively, justify it); Terry v. Ohio, 392 U.S. 1, 20-22 (1968) (reasonableness is viewed from the perspective of a reasonable officer on the scene without the benefit of hindsight). The reasonableness inquiry is dispositive: "When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." Mendez, 137 S.Ct. at 1547.

Plaintiff alleges that officers dragged him out of the bathroom naked, tazed him when he

8

asked if they had a warrant, then beat and kicked him while he was on the ground. These allegations are sufficient to state a plausible claim for the excessive use of force and this claim will be permitted to proceed.

**(4)** **Deliberate Indifference**

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. Hudson v. McMillian, 503 U.S. 1, 1 (1992).

A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Hudson, 503 U.S. at 5, and must result in the denial of "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The second requirement is subjective and requires that a prison official must have a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297, 302-03; Hudson, 503 U.S. at 5, 8. An actionable deliberate indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a "substantial *risk* of serious harm." Farmer v. Brennan, 511 U.S. 825, 837 (1994) (emphasis added). The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).

To state a *prima facie* case of deliberate indifference to a serious medical need, a plaintiff

must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifferent to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825. However, mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852.

Plaintiff alleges that he requested medical attention after his arrest, that he had "cracked ribs" of which he was unaware, and that he informed "medical," Sergeant Bradley, and Lieutenant Fuss, none of whom are named as defendants, that he was being denied adequate care.

These vague, conclusory, and contradictory claims are insufficient to allege that any named defendant knew of, and disregarded, a serious medical need. Therefore, Plaintiff's claim of medical deliberate indifference will be dismissed for failure to state a claim.

## V. CONCLUSION

For the reasons stated herein, the Complaint is sufficient to proceed against Defendants Lolley, Whitaker, and Newell, for illegal seizure and the use of excessive force. The remaining claims are dismissed. Plaintiff may file a superseding Amended Complaint within 14 days in which he may attempt to add parties and cure the deficiencies identified in this Order.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs,

(Doc. No. 2), is **GRANTED**.

2. The illegal arrest and excessive force claims against Defendants Lolley, Whitaker, and Newell, survive initial review under 28 U.S.C. § 1915.

3. The remaining claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

4. Plaintiff shall have 14 days in which to file a superseding Amended Complaint in accordance with this Order and all applicable rules and procedures. If Plaintiff fails to file an Amend Complaint within the time limit set by the Court, this action will proceed on the original Complaint, (Doc. No. 1).

5. The Clerk is directed to mail a copy of the Complaint, (Doc. No. 1), and a new Section 1983 complaint form to Plaintiff.

6. **IT IS FURTHER ORDERED THAT** the Clerk is directed to mail summons forms to Plaintiff for Plaintiff to fill out and return for service of process on Defendants Defendants **Lolley, Whitaker,** and **Newell**. Once the Court receives the summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendants. The Clerk is respectfully instructed to note on the docket when the form has been mailed to Plaintiff.

Signed: August 14, 2018

*[signature]*

Frank D. Whitney
Chief United States District Judge